**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 17-CR-438 |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| RAMONE SHAFFERS, | ) | |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Ramone Shaffers was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) based on evidence found during a warrantless search of his car by two Chicago police officers. Shaffers has now moved to suppress the physical evidence of the firearm and his post-arrest statements on the basis that they were obtained in violation of his Fourth Amendment rights. R. 23. On May 11, 2018, the Court held an evidentiary hearing on the motion to suppress. The Court then asked the parties to brief two issues raised during the hearing: (1) whether hearing "loud music" and smelling cannabis by the officers provided sufficient reasonable suspicion for them to conduct a *Terry* stop; and (2) whether the location of Shaffers's vehicle in a parking spot in an alleyway reserved for tenants was relevant to the Court's Fourth Amendment analysis under the recently decided case of *Collins v. Virginia*, 138 S. Ct. 1663 (2018). Shaffers and the government filed briefs addressing the issues raised by the Court. R. 44, 48, 50, 51. For the following reasons, Shaffers's motion to suppress is denied.

## Factual Background[1]

On October 16, 2016, around midnight, Shaffers was at a party at his sister's apartment. Shaffers, his girlfriend Talieta Fulton, his other sister Shirley Butler, and her boyfriend Cornell Westberry, left the party to go to the store. Before going to the store, they sat in Shaffers's parked car playing loud music and smoking cigarettes. The car was parked in a parking lot reserved for tenants and their guests adjacent to an alley in the 6200 block of S. Cottage Grove Avenue behind Shaffers's sister's apartment. The parking lot was a row of spaces next to the alley and was separated from the apartment building by a set of stairs and a short fence. The parking lot also had a sign that warned that illegally parked and unauthorized vehicles would be towed. Shaffers's parked car was not blocking the alley. There is some dispute as to whether Shaffers and the passengers were smoking marijuana in the car—all three passengers testified they were not smoking marijuana in the car, but Butler testified that she and Westberry smoked marijuana before entering the car. Butler also testified that she threw the "duck" (i.e. the end of a joint) out the window before lighting up her cigarette. There was no marijuana found in the car.

Chicago police officers Streeper and Bruno were patrolling the alley, which is located in a high-crime area with significant gang activity. They did not receive any noise complaints that led them to investigate the alley. Officers Streeper and Bruno heard loud music and smelled a strong odor of burnt cannabis coming from

---

[1] The following facts are based upon the representations in the parties' briefs and the evidence presented at the hearing on May 11, 2018. The facts are undisputed except where otherwise noted.

Shaffers's vehicle. They pulled up behind Shaffers's car and blocked it from leaving. They got out of their car, approached the vehicle, and Officer Streeper drew his weapon. Officer Streeper testified that as the officers approached the vehicle, they observed Shaffers, who was sitting in the driver's seat, make "furtive" movements toward the driver's side floorboard. Officer Streeper told Shaffers to put his hands on the steering wheel. At first, Shaffers did not comply, but eventually put his hands on the wheel. The officers then ordered Shaffers and Westberry to exit the vehicle. As Officer Bruno proceeded to attempt to handcuff Westberry and Shaffers together, Shaffers fled on foot. Officer Bruno chased after Shaffers but was unable to catch him. Butler and Fulton were also eventually ordered to exit the vehicle.

While Butler was still in the back seat, Officer Streeper searched the vehicle and discovered a handgun and ammunition. The gun was found by the driver's seat, "in plain view." The three passengers who remained were arrested, questioned, and released without charges. Shaffers's car was impounded. All three passengers testified that the gun did not belong to them. They also testified that they did not see Shaffers with a gun that night before the officers found it. Shaffers was arrested on June 30, 2017.[2]

---

[2] During the evidentiary hearing, the government sought to introduce records of Shaffers's jail phone calls that contradicted the statements Shaffers made after his arrest. Shaffers submitted an affidavit with his motion to suppress that corresponds with the testimony of the passengers but is not consistent with the statements he made immediately following his arrest. The Court will rely on Shaffers's affidavit and treat the jail calls as irrelevant to its analysis here. The government also stated that the jail calls were relevant to assessing Butler's credibility. But, during the evidentiary hearing, Butler clarified that she was smoking marijuana around the car on the night of the incident. Regardless of whether she was smoking inside the

Analysis

The Fourth Amendment protects individuals from unreasonable searches and seizures. Shaffers contends the officers violated his Fourth Amendment rights by unreasonably (1) seizing him by blocking his vehicle, preventing him from leaving, and by pointing a weapon at him; and (2) searching his vehicle without a warrant.

**A. Unreasonable Seizure**

   **1. Seizure**

The government first argues that the alleged seizure of Shaffers does not implicate the Fourth Amendment because Shaffers had voluntarily stopped his car. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). "A consensual encounter between an officer and a private citizen does not trigger the Fourth Amendment. . . . A consensual encounter becomes a seizure when a reasonable person in those circumstances would not feel free to leave." *United States v. Clements*, 522 F.3d 790, 794 (7th Cir. 2008) (citations omitted).

The government cites to *Clements* and *United States v. Williams*, 285 F. App'x 284 (7th Cir. 2008) in support of its argument that the officers' encounter with Shaffers does not implicate the Fourth Amendment because Shaffers had parked voluntarily—he was not pulled over by the officers. R. 26 at 4. In *Clements*,

---

car or around the car, the officers' smelling of burnt cannabis provided reasonable suspicion for a *Terry* stop.

4

the police received a complaint that Clements had been parked outside of a residence for four hours with the engine running. The officers parked fifteen to twenty feet behind his vehicle. The court held Clements was not seized when the officers approached his car because they did "nothing that could have made Clements feel that his freedom was restrained: they did not draw their weapons, they did not surround Clements's car with multiple squad cars or officers or otherwise prevent him from driving away, they did not lay a hand on Clements, and they did not use forceful language or tone of voice until after the officers felt threatened by Clements's gesture with the knife." *Clements*, 522 F.3d at 795. Likewise in *Williams*, Williams was sitting in his parked car under a "no loitering" sign when police officers drove up in their squad car, smelled marijuana, and asked Williams to get out of the car. *Williams*, 285 Fed. Appx. at 285. They did not engage the squad car's siren or overhead flashing lights. *Id*. Instead of complying, Williams drove away. The court held that the officers' initial approach of Williams's vehicle was not a seizure at all because, like in *Clements*, Williams was already sitting in a stopped car. *Id*. at 287.

Here, unlike *Clements* and *Williams*, the officers' initial approach was a seizure that implicates the Fourth Amendment because it "restrained [Shaffers's] liberty" through the use of "physical force or show of authority." *Terry*, 392 U.S. at 19 n. 16; *see also United States v. Johnson*, 874 F.3d 571, 574 (7th Cir. 2017) ("two squad cars, which bathed the parked car in bright light, implied that the occupants were not free to drive away" and was a seizure). The officers blocked Shaffers's

5

vehicle, preventing him from leaving, and approached Shaffers's vehicle with at least one gun drawn. No reasonable person would have felt free to leave under such circumstances, and Shaffers was physically prevented from moving his car. The officers' conduct constitutes a seizure under the Fourth Amendment.

### 2. Reasonableness

But a seizure does not always violate the Fourth Amendment. Under *Terry*, 392 U.S. at 30-31, officers may stop and briefly detain a person for investigative purposes without violating the Constitution if they have reasonable suspicion supported by articulable facts that criminal activity may be afoot. "Reasonable suspicion is more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). Whether or not reasonable suspicion of criminal activity exists to initiate a *Terry* stop is measured objectively based on the sum of all facts available at the time of a defendant's seizure, and "reasonable suspicion can arise from behavior that may in other circumstances be considered innocent; in other words, context matters." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015). Moreover, because reasonable suspicion is evaluated in light of the totality of the circumstances, "certain behavior may give rise to reasonable suspicion when viewed in the context of other factors at play." *Jewett*, 521 F.3d at 824. If reasonable suspicion does not exist, such that a defendant is detained in violation of his Fourth Amendment rights, the exclusionary rule will apply to "kick [ ] out the unlawfully

6

obtained evidence" recovered as a result. *United States v. Slone,* 636 F.3d 845, 848 (7th Cir. 2011).

The events here meet the standard to justify a *Terry* stop. Shaffers's car was located in an alley in a high crime area, playing loud music around midnight in violation of a local noise ordinance. *See United States v. Thomas*, 381 F. App'x 495, 498 (6th Cir. 2010) (playing loud music in violation of a Tennessee statute justified a *Terry* stop). The officers smelled marijuana around Shaffers's car from their car (the officers' car windows were open). Butler admitted—at the very least—that they had smoked marijuana in the vicinity of the car. The officers thus had reasonable suspicion that Shaffers and his passengers had marijuana in the vehicle. *See Williams*, 285 F. App'x at 286 (smell of marijuana, along with other factors, sufficient to support *Terry* stop). Further, Shaffers's refusal to put his hands on the steering wheel and his fumbling near the floorboard of the driver's seat further aroused suspicion of criminal activity in the context of the totality of the circumstances. Thus, under *Terry*, the officers had reasonable suspicion to approach Shaffers's vehicle and briefly detain its passengers.

### B. Unreasonable Search

Shaffers also argues that the officers' search of his car without a warrant violated the Fourth Amendment. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The

government offers three justifications for the search: (1) a protective search of the vehicle was reasonable after making a stop of Shaffers's vehicle in the alley; (2) the automobile exception applies; (3) and the evidence recovered would have inevitably been discovered through lawful means, implicating the "inevitable discovery" doctrine.[3]

### 1. Protective Search

An officer with a reasonable suspicion that a motorist may be armed and may be able to gain immediate control of weapons may conduct a protective search of the passenger compartment of the vehicle without a warrant. *Michigan v. Long,* 463 U.S. 1032, 1049 (1983). Such a search must be confined to "those areas in which a

---

[3] The Court is not convinced that the government's third reason, the inevitable discovery doctrine, justifies the search. The government argues that the gun would have inevitably been discovered through lawful means, namely an inventory search when the government impounded Shaffers's car. An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *United States v. Cartwright,* 630 F.3d 610, 614 (7th Cir. 2010). But, "[b]oth the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment." *Id*. Here, Shaffers had not been arrested. Nor did the government have any reason to impound his car, rather than just the gun. Shaffers's car was not left in a public thoroughfare or parking lot—it was parked behind his sister's apartment, in a private lot, and was not blocking traffic. Shaffers's car was likely "authorized" to be there. Further, although Shaffers fled, Butler (his sister) or Fulton (his girlfriend at the time) could have moved the car before his sister had another visitor who needed the spot. Although arrested, all three passengers were released after a couple of hours without being charged. *Cf. Cartwright* at 615 (passenger had no means of ensuring the "speedy and efficient" removal of her car from the parking lot of a grocery store); *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005) (Pittman abandoned car from public way). *See also United States v. Clinton*, 591 F.3d 968, 970 (7th Cir. 2010) (officers pulled over and arrested suspect at a red light, leading to a valid inventory search); *United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006) (illegally parked car was properly impounded and searched).

weapon may be placed or hidden." *Id*. Unusual movements, such as Shaffers's furtive movements here, may lead to reasonable suspicion that an individual has retrieved or concealed a weapon. *United States v. Arnold*, 388 F.3d 237, 240 (7th Cir. 2004). In *Arnold*, the officer saw Arnold either retrieving or placing something in the back seat, which gave him "a lot of concern for what might be in the vehicle." *Id*. at 238. The Seventh Circuit held that was sufficient to give the officer reasonable suspicion to search the car, including by pulling down the armrest in the back seat that opened to the trunk because Arnold could have gained immediate access to the gun. *Id*. at 240-41. *See also United States v. Schlatter*, 411 F. App'x 896, 899 (7th Cir. 2011) (officer had reasonable suspicion to search the car after the defendant was moving around suspiciously in the driver's seat after being stopped for speeding at 1:30 am in a "dark part of the city"); *United States v. King*, 332 F. App'x 334, 337 (7th Cir. 2009) (officers had reasonable suspicion to conduct a protective search after both occupants made furtive gestures and unusual movements consistent with weapons concealment, followed by multiple refusals to show their hands, after leaving a "known gang member hangout").

Here too, the officers testified that they saw Shaffers make "furtive" movements around the floor of the driver's seat rather than putting his hands up or placing them on the steering wheel as requested. In *Arnold*, the officer had to pull down the armrest in the back seat to uncover the gun. The gun here was located in plain view, more easily accessible to the passengers in Shaffers's vehicle. In fact, there was at least one unsecured arrestee—Butler—in the back seat when Officer

9

Streeper saw the gun. Shaffers makes no attempt to distinguish *Arnold*. Accordingly, in light of Shaffers's furtive movements, the fact that at least one of the three passengers had immediate access to the gun, and the location of the vehicle in a high crime area at midnight, the officers' search of the vehicle was reasonable.

### 2. Automobile Exception

The automobile exception is a well-established principle in Fourth Amendment doctrine. Due to an automobile's "ready mobility" and an individual's reduced right to privacy of an automobile, searches of vehicles are reasonable when there is probable cause to believe that the search will uncover contraband or evidence of crime. *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005). Here, the fact that Shaffers fled from the scene as soon as he left the car gave the officers probable cause to believe that the car would turn up contraband, especially with his furtive movements, his refusal to comply with the officers' previous orders, and the strong smell of marijuana. *Id.* ("When both occupants bolted and one was discovered to have an arrest warrant outstanding against him, the police had probable cause to believe that a search of the car would turn up contraband or evidence of crime. It was apparent . . . that both occupants had strong reasons to evade contact with the police."); *United States v. Franklin*, 547 F.3d 726, 735 (7th Cir. 2008) (odor of marijuana sufficient to provide probable cause to search passenger compartment and containers within passenger compartment).

But, Shaffers argues, because his vehicle was parked on private property in the curtilage of a home, the officers' search violated the Fourth Amendment's protection of homes. Unlike automobiles, officers may not intrude on an individual's home, including its "curtilage"—the area immediately surrounding and associated with the home—because the home and its curtilage are "intimately linked" and are "where privacy expectations are most heightened." *Collins*, 138 S. Ct. at 1670. As a result, an officer's physical intrusion on a home's curtilage to gather evidence is "presumptively unreasonable absent a warrant." *Id*. The *Collins* Court examined the interaction between the automobile exception and the privacy exceptions of the home, and held that the automobile exception does not permit "a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein." *Id*. at 1668. In *Collins*, the search at issue was of a motorcycle parked under a tarp at the "top portion of the driveway that sits behind the front perimeter on the house [and] is enclosed on two sides by a brick wall about the height of a car and on a third side by the house." *Id*. at 1670. A door from the house led directly into this partially enclosed area. *Id*. at 1671. The Supreme Court held that this area of the driveway was "curtilage" because it was adjacent to the home and constituted a location "to which the activity of home life extends." *Id*. The Court thus held that the automobile exception did not justify the intrusion into the curtilage to search the motorcycle for its identification number.

*Collins* does not help Shaffers's case. Shaffers's car was parked in the *shared* driveway of tenants in a multi-family building and was separated by

11

stairs and a short fence from the building. In *United States v. Jones*, 2018 WL 3028685 (2d Cir. June 19, 2018), Jones's vehicle was parked in a parking lot behind the multi-family building in which he lived. The court held that Jones had no legitimate expectation of privacy in the rear parking lot because it was accessible to other tenants of the building and because he did not have exclusive control of the area. *Id.* at *4-5. The same reasoning applies here. Shaffers was parked in a lot shared by the residents of the multi-family building. Unlike in *Collins*, the parking lot did not abut the residence, but was separated by stairs and a fence. Nor did the parking lot constitute a location to which the activity of home life extends. And unlike in *Jones*, Shaffers did not even live in the building behind which he was parked—he was a *guest* at a party who parked in the parking lot. There was no evidence presented that he was an overnight guest, who may be entitled to Fourth Amendment protection. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998) ("[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."); *United States v. Garcia*, 2014 WL 6757949, at *9 (N.D. Ill. Dec. 1, 2014) (guest did not have reasonable expectation of privacy in co-defendant's apartment); *United States v. Johnson*, 2008 WL 5244847, at *7 (S.D. Ill. Dec. 16, 2008) (non-overnight social guests are not entitled to Fourth Amendment protection in their host's home). Shaffers did not have a reasonable expectation of privacy in his host's parking space.

## Conclusion

For the reasons explained above, the Court denies Defendant Ramone Shaffers's motion to suppress, R. 23.

ENTERED:

*Thomas M Durkin*

Dated: June 26, 2018

Honorable Thomas M. Durkin
United States District Judge