UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 17 CR 438 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| RAMONE SHAFFERS | ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT CERTAIN EVIDENCE AS DIRECT EVIDENCE, OR IN THE ALTERNATIVE, AS EVIDENCE ADMISSIBLE PURSUANT TO RULE 404(B)[1]**

The UNITED STATES OF AMERICA, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby respectfully moves *in limine* to admit certain evidence as direct evidence of the charged offense, or, in the alternative, as evidence admissible pursuant to Federal Rule of Evidence 404(b). In support thereof, the government states as follows:

**I. BACKGROUND**

In the early morning hours of October 16, 2016, two officers with the Chicago Police Department pulled behind a parked car in which the defendant, a woman defendant was dating, the defendant's sister, and the defendant's sister's boyfriend were sitting. The officers smelled burnt cannabis and heard loud music, and accordingly began an investigation by asking the defendant and other individuals to show their hands. The defendant, who was sitting in the driver's seat, initially refused, making furtive movements with his hands. Ultimately, upon an officer's command, defendant exited the car and moved toward the officer. As the officer

---

[1] This motion in limine is filed in addition to the motion in limine filed on March 8, 2019 seeking admission of specific jail calls and defendant's post arrest statement. R. 155.

attempted to secure the defendant, he fled. One of the officers ran after the defendant but was unable to catch him. Police subsequently recovered a firearm from the area where the defendant was sitting in the car. After investigation, including statements from the other three individuals in the car, law enforcement determined that the individual that ran from the vehicle was the defendant.

On June 22, 2017, a grand jury returned an indictment charging defendant with one count of possession of a firearm by a convicted felon. R. 1. Pursuant to an arrest warrant, on June 30, 2017, defendant was arrested. On July 13, 2017, a detention hearing was held and the defendant was ordered to remain in custody pending trial or until further order of the court. R. 16. Defendant was housed in the Jerome Combs Detention Center in Kankakee County.

On October 2, 2017, while this case was pending, defendant called Paris Madlock using the Kankakee Detention Center Personal Identification Number ("PIN") of another inmate named Dione Flynn. During that call, defendant told Ms. Madlock that "this dude … gave [him] a call" and that he was "glad that [he] was able to use this call." Defendant then asked Ms. Madlock to call witnesses on his case and ask them to testify a certain way or change the statement they previously gave to law enforcement. Specifically, defendant said:

> Hey, I need, I need for them to—man, only thing they gotta do, man, even if they just, even if everybody just in agree, like, no, it wasn't him, it wasn't him, it wasn't him. You know what I'm saying? I could, I could go with, I could go with, man, I lent somebody my car. Or, or even if somebody did—or if they just say it wasn't him. Then they gonna ask, "Oh real? Who was it?" You know I had his car with some dude that I met, you know what I'm saying, I met him today. I had some other dude—so you had some other dude in his car? Yep. Why? Uh,

2

> we was beefing. He dealing with you. Anything, anything. I could put in the—put, put the motion in and that shit'll get thrown right out instantly. Either that, that or they could say everybody could say he didn't have nothing. He was there, but he ain't have nothing. Nothing. They gonna throw that shit right out. Motion out. Or he could demand trial out. Everything is thrown out.

Defendant continued to try to convince Madlock during that call:

> Have, have Stupid [PH] and them—tell her to tell Stupid and them, "Look, it wasn't him. She had—old girl came over with some dude and that's it." "Well, why did you all say this at first?" "Cause we knew who, who, who, who car it was and know we was there. We ain't want to get in trouble." That's it, that's it. You can either tell them or have Chita [PH] tell them. That's it, man. That's easy as hell.

During that call, Ms. Madlock refused to call the witnesses as defendant asked.

Subsequently, on October 3, 2017, while this case was pending, defendant called Ms. Madlock again, this time using the PIN of a different inmate named Rayfield McNair. During that call, the defendant asked Ms. Madlock to call someone for some "papers" or affidavits. He told her "I ain't got that much time to use somebody else phone." Defendant asked Ms. Madlock have to have "Ms. G" call someone. Specifically, defendant stated:

> I'm saying if you ta—I know, I understand you ain't gonna call her, but that shit—she talking about she don't wanna talk, but she, she gonna have to, man. Like, tell them, like, tell her something, like, "Man, look. You know on, man, you got my fucking, my son is in there because of you and I need him home and I can't get him home without you doing anything." Tell her a, a motherfucker will give her five hundred dollars, a thousand dollars or something, man. For real, man. I need to fucking get the fuck up out of here, man.

Defendant continued to try to convince Madlock during the call to contact witnesses:

> I need, I need Stupid and them to fucking—man, I need you to even text them. Send that text to her, like, "Man, look. You got—you and your

3

> guy whatever y'all said got him in there, man; he's facing a long time. I need to talk to you, like, right now. You know what I'm saying? Call me back. Ain't nothing that important whatever." Anything, man. Let me know something, man. Please, man, please. Tell Georgia, man, she gonna have to call them, man. She gonna have to. Ain't nobody else will call her. You ain't gonna call her, and you don't want to call her and you ain't gonna call her. Ain't nobody else to call her. I need somebody to call her, man. Like, look, only thing they gotta say, even if you text Stupid, like, look, just say—you and your guy—it wasn't him. I don't know who old girl had in the car with him. You know what I'm saying? It was her, but it wasn't him and that's it. And, and, and Georgia need to tell old girl, "Look, I need to get him home. Only thing you got to tell them or write down is okay, uh, that wasn't him. Uh, I had somebody else in the car with me, you know what I'm saying? I know that was wrong for having somebody else in his car because I mean, whatever, but—and I, I did that because I know he was fucking with his son, mother, whatever, his kid's mother," and that's it. If, if she—be like, man, look. If you—motherfucker give you a few dollars, man. Motherfucker give you five hundred dollars or whatever if you do this and say that. As long as they say it wasn't him. It wasn't him. She could say it wasn't him it was somebody else. Some dude that I had in the car. I don't know what—I had, like—I let him drive and that shit happened. I didn't know nothing about it, but it wasn't him. Stupid and her guy. It wasn't him, man, I, I just said that because, uh, they one of the ones [Noise in the background] that told me who car it was or whatever then I just said it was him. So I was scared or whatever. [Noise in the background] [U/I] I get him five hundred dollars too. Can you hear, can you hear what I'm saying?

Madlock refused, telling defendant:

> Yeah, I hear what you saying. And what you're saying is you trying to get us to do some illegal ass shit. Cause all it takes for your mama to call that girl and tell her that then she tell them people that she said that shit and then they gonna be trying to lock her up.

On March 14, 2019, a grand jury returned a superseding indictment, charging defendant with one count of possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 9222(g)(1) and one count of endeavoring to

4

impede the due administration of justice, in violation of Title 18, United States Code, Section 1503, based on his October 2017 calls to Ms. Madlock.

## II. THE EVIDENCE THE GOVERNMENT SEEKS TO OFFER IS DIRECT EVIDENCE OF THE CHARGED CONDUCT, AND IN THE ALTERNATIVE, IS ADMISSIBLE UNDER RULE 404(B) OF THE FEDERAL RULES OF EVIDENCE

The government seeks to admit as direct evidence the fact that defendant used the PINs of Dione Flynn and Rayfield McNair when he made the calls that are the subject of Count Two of the superseding indictment. The fact that defendant chose to use a different PIN when making those specific calls is directly relevant to defendant's corrupt intent when he instructed Ms. Madlock to ask witnesses in this case to change their testimony. Alternatively, the fact that defendant used the PINs of different inmates when making the calls demonstrate defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, and is therefore admissible pursuant to Rule 404(b).

### A. Direct Evidence

To prove obstruction of justice under Title 18, United States Code, Section 1503, the government must establish (1) there was a pending judicial proceeding; (2) the defendant knew of the pending judicial proceeding; (3) the defendant influenced, obstructed, impeded, or endeavored to influence, obstruct, or impede the due administration of justice in that proceeding; and (4) the defendant acted corruptly. *United States v. Cueto*, 151 F.3d 620, 633 (7th Cir. 1998). Here, the defendant's calls using the PINs of other inmates bear directly on the fourth element that the defendant acted corruptly. Direct evidence of the charged offense – that is, evidence

5

that tends to establish an element of the offense – is not within the scope of Rule 404. *United States v. Vargas*, 689 F. 3d 867, 874 (7th Cir. 2012).

The government expects the evidence to show that when an inmate is brought to the Jerome Combs Detention Center in Kankakee County, that inmate is assigned a unique and individualized PIN to use for phone calls and other items. Inmates must assign money to their PIN in order to make phone calls or get other items. Here, the defendant used the PIN of two separate inmates both on October 2, 2017 and October 3, 2017 to call Paris Madlock. During its case in chief, the government will seek to introduce charts that outline all of the calls defendant made on October 2, 2017 and October 3, 2017 from his own PIN and from other PINs. Those charts will show that the defendant made calls on October 2 and October 3, 2017 using his own PIN and only used the PIN of other inmates when making the calls discussing his efforts to obstruct. This evidence helps to establish the element necessary to find the defendant guilty of Count Two – that the defendant acted with the corrupt intent to impede the due administration of justice, and not for some other reason.

During its presentation of the evidence, the government does not intend to seek testimony about the rules regarding the use of PINs belonging to other inmates. The sole purpose of the government's evidence is to show defendant's intent and whether or not he acted corruptly. Therefore, it is the government's position that this evidence is not considered a bad act under Rule 404(b) and is direct evidence of the charged conduct in Count Two of the superseding indictment.

**B.  If the Court Considers the Evidence as "Other Acts" under Rule 404(b) of the Rules of Federal Evidence, the Evidence is Still Admissible**

Where evidence does not constitute direct evidence of the crime, Rule 404(b) of the Federal Rules of Evidence permits the admission of evidence of "a crime, wrong, or other act" in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  In *United States v. Gomez*, 763 F.3d 845 (7th Cir.), the Seventh Circuit "set the roadmap" for determining the admissibility of other-act evidence. *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019). First, "after a Rule 404(b) objection, the proponent of the other-act evidence must demonstrate that the evidence is relevant to a legitimate purpose 'through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860). "If the proponent does so, the district court must then use Rule 403 to determine 'whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice,' taking into account 'the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860).

Here, the use of PINs from other inmates to call Ms. Madlock is probative of the defendant's motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake. As outlined above, the defendant sought to use the accounts of other inmates to hide his corrupt behavior from law enforcement.   That is clear from

7

the fact that he used his own PIN in his other calls to Ms. Madlock on the same days and his statements during the call that he was "glad that [he] was able to use this call" immediately before requesting Ms. Madlock call witnesses to get them to change their testimony. Defendant decided to use the PIN of another individual to call Ms. Madlock because he knew that he wanted to speak to her about endeavoring to corruptly influence, obstruct, and impede the administration of justice in his case. The only time the defendant used the PIN of a separate inmate to speak to Ms. Madlock on October 2, 2017 and October 3, 2017, he spoke about having her call witnesses to ask them to change their testimony and statements. That demonstrates defendant's motive, preparation and plan, as well as his knowledge and lack of mistake or accident.

Additionally, the probative value of the evidence is not substantially outweighed by any risk of unfair prejudice. The proffered evidence does not impermissibly suggest that the defendant had a propensity to commit the charged offense of obstruction. The defendant's use of other PINs is not charged, nor does it follow that his improper use is equivalent to obstructing justice. Instead, the proffered evidence is highly probative of the defendant's motive, opportunity, intent preparation, plan, knowledge and absence of mistake and is not substantially outweighed by any risk of prejudice the defendant may mention.

8

### III. CONCLUSION

For the reasons set forth above, the government moves to admit evidence as set forth above.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Albert Berry III*
ALBERT BERRY III
MATTHEW KUTCHER
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 469-6049

Dated: May 31, 2019